KYLE J. KAISER (13924)
DANIEL R. WIDDISON (11979)
Assistant Utah Attorneys General
Attorneys for Defendants
160 East 300 South, Sixth Floor
P.O. Box 140856
Salt Lake City, Utah 84114-0856
Telephone: (801) 366-0100
Facsimile: (801) 366-0101
E-mail: kkaiser@utah.gov
E-mail: dwiddison@utah.gov

## IN THE UNITED STATES DISTRICT COURT

## IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ANIMAL LEGAL DEFENSE FUND, PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, COUNTERPUNCH, AMY MEYER, WILL POSTTER, DANIEL HAUFF, JAMES McWILLIAMS, and JESSE FRUHWIRTH, | **DEFENDANTS' MOTION TO DISMISS AND SUPPORTING MEMORANDUM** |
| Plaintiffs, | |
| v. | Case No. 2:13-cv-00679-RJS |
| | Judge: Robert J. Shelby |
| GARY R. HERBERT, in his official capacity as Governor of Utah; JOHN SWALLOW, in his official capacity as Attorney General of Utah, | |
| Defendants. | |

**TABLE OF CONTENTS**

**Contents**

MOTION....................................................................................................................... iv

INTRODUCTION ........................................................................................................ iv

STATEMENT OF FACTS ............................................................................................. v

LEGAL STANDARD................................................................................................. viii

ARGUMENT ................................................................................................................. 1

   I.     THE PLAINTIFFS LACK STANDING TO CHALLENGE THE STATUTE. ........... 2

      A.    There is no credible threat that any of the Plaintiffs will be prosecuted under the statute. ................................................................................................................. 3

      B.    The Plaintiffs have not demonstrated that the statute has a chilling effect on their speech.................................................................................................................. 4

      C.    The Plaintiffs each lack standing to challenge the statute. ........................................ 5

          1.   Animal Legal Defense Fund ................................................................................. 5

          2.   People for the Ethical Treatment of Animals ......................................................... 6

          3.   Counterpunch ...................................................................................................... 7

          4.   Amy Meyer ......................................................................................................... 7

          5.   Will Potter.......................................................................................................... 8

          6.   Daniel Hauff........................................................................................................ 8

          7.   James McWilliams............................................................................................... 8

          8.   Jesse Fruhwirth .................................................................................................. 9

   II.    PLAINTIFFS FAIL TO STATE A CLAIM THAT THE STATUTE IS MOTIVATED BY ANIMUS IN VIOLATION OF THEIR EQUAL PROTECTION RIGHTS. .......... 9

      A.    Where animus is alleged, the statute is still subject to rational basis review.............. 9

      B.    The law serves a legitimate government interest by protecting private property rights. ................................................................................................................. 12

      C.    Animus alone does not act to invalidate the law...................................................... 14

III.     PLAINTIFFS HAVE FAILED TO STATE A CLAIM THAT H.B. 187 IS PREEMPTED BY FEDERAL LAW. ......................................................................... 15

    A.    The False Claims Act does not expressly preempt H.B. 187.................................. 16

    B.    Federal law is not so predominant that it precludes state protection of agricultural operations in this manner. ...................................................................................... 17

    C.    There is no actual conflict between the False Claims Act and H.B. 187................. 17

CONCLUSION............................................................................................................................ 18

APPENDIX A .............................................................................................................................. 19

Defendants Governor Gary R. Herbert and Attorney General John Swallow, by and through their counsel of record, and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure hereby move that this court dismiss Plaintiffs' Complaint, in its entirety for the reasons outlined in the accompanying memorandum.

## MOTION

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants hereby move that this Court dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted.  Defendants request that this court dismiss Plaintiffs' Complaint because, as a matter of law, they lack standing, or in the alternative, because they fail to state a claim for violation of their Fourteenth Amendment right to equal protection or that H.B. 187 is preempted by the False Claims Act.

## INTRODUCTION

In 2012, the Utah State Legislature passed H.B. 187, "Agricultural Operation Interference", which was signed by the Governor and codified as Utah Code Ann. § 76-6-112. H.B. 187 criminalizes four acts: (a) surreptitiously leaving a recording device in an agricultural operation; (b) obtaining access to an agricultural operation under false pretenses; (c) obtaining employment for the purpose of recording the operation and production a recording thereof; and (d) recording an agricultural operation while committing a criminal trespass.  Violation of section (a) of the statute is a class A misdemeanor and violation of sections (b), (c), or (d) is a class B misdemeanor.

Plaintiffs are various organizations and individuals who claim to be affected by enactment and threatened enforcement of H.B. 187.  They have asserted that the statute violates their First Amendment right to free speech, and their Fourteenth Amendment right to equal protection of the law, and that the statute is preempted by the Federal False Claims Act.[1] Defendants move to dismiss the entire Complaint on the grounds that none of the Plaintiffs has standing to challenge the law.  Alternatively, the Court should dismiss Plaintiffs' fourth cause of action because Plaintiffs have not pled facts sufficient to show that the law was motivated by animus and lacks a legitimate government interest and should dismiss Plaintiffs' third cause of action because Plaintiffs cannot show that the statute is preempted by the Federal False Claims Act.

## STATEMENT OF FACTS

Taking all of the non-conclusory factual allegations made in the Complaint as true, the following facts form the basis of the Defendants' Motion:[2]

1.      In 2012, Utah adopted House Bill 187, codified at Utah Code Ann. § 76-6-112 (West 2012) which criminalizes "agricultural operation interference".  (Compl. ¶ 29 (Doc 2).)

*Parties*

2.      Plaintiff–ANIMAL LEGAL DEFENSE FUND (ALDF) is a national non-profit animal protection.  ALDF asserts that it has the intention to conduct an investigation at an animal

---

[1] 31 U.S.C. §§ 3729, 3730 (2006).

[2]  The Defendants dispute a number of facts set forth in the Complaint, but treat as true all non-conclusory facts for the purpose of this Motion only.

agricultural operation in Utah but has refrained from doing so out of a fear of criminal prosecution.  ALDF has identified potential investigation sites, contracted with a private investigation firm licensed in Utah, obtained employment applications from agricultural operations, and engaged an expert consultant – Plaintiff Daniel Hauff – to advise it on an undercover, employment-based investigation at a factory farm.  If H.B. 187 law is declared unconstitutional, ALDF alleges it will follow through with its plans to conduct and publicize an undercover investigation at an agricultural operation.  (Compl. ¶ 19 (Doc 2).)

3.      Plaintiff PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS (PETA) is a Virginia nonprofit corporation.  PETA's stated is to protect animals from abuse, neglect, and cruelty, and alleges that it undertakes these efforts through public education, undercover investigations, research, animal rescue, legislation, special events, celebrity involvement, protest campaigns, and lawsuits to enforce laws enacted to protect animals.  PETA also alleges that it is "interested and willing to conduct an investigation in Utah but for the threat of criminal prosecution under [H.B. 187]."  (Compl. ¶ 20 (Doc 2).)

4.      Plaintiff COUNTERPUNCH is a progressive print and online journal. CounterPunch regularly reports on undercover investigations at factory farms.  It alleges that H.B. 187 inhibits its undercover investigations in Utah.  If H.B. 187 is declared unconstitutional, CounterPunch alleges that it will report on the findings of undercover factory farm investigations conducted in Utah.  It does not allege that it will conduct the investigations, nor does it allege how it plans to conduct its reporting.  (Compl. ¶ 21 (Doc 2).)

5.      Plaintiff AMY MEYER is a resident of Salt Lake County, Utah. Meyer is an animal activist and has in the past engaged in protests and demonstrations in a claimed effort to bring public awareness to animal issues, including the treatment of farmed animals.  On February 8, 2013, Meyer was standing on public property adjacent to a slaughterhouse in Draper City, Utah.  While there, she recorded images of practices she believed to be disturbing from her vantage point on the adjacent public right-of-way.  Although Meyer never entered private property, she was questioned by the Draper City Police and subsequently charged with violating H.B. 187, subsection (4).  Meyer was criminally charged and retained private counsel, but her case was dismissed without prejudice.  Meyer claims that she intends to continue her animal activism and has "concrete plans" to engage in First Amendment activities related to that activism generally and to animal agriculture specifically, though Meyer does not describe what those concrete plans are.  (Compl. ¶ 22 (Doc 2).)

6.      Plaintiff WILL POTTER is a journalist, author, and public speaker based in Washington, D.C. involved in the animal rights and environmental movements.  Potter alleges that he would report the findings of other investigations at animal agricultural operations in Utah. (Compl. ¶ 22 (Doc 2).)

7.      Plaintiff DANIEL HAUFF is an animal and human rights activist, consultant, and has experience in employment-based undercover investigations at animal agricultural operations. Hauff alleges that Plaintiff ALDF has engaged him to coordinate an undercover, employment-based investigation in Utah alleging that ALDF would pay Hauff to oversee such an investigation.  Hauff does not allege that he himself would undertake the investigation.  Hauff

claims that H.B. 187 prevents him from accepting the job, because of his "fear of being prosecuted as an accomplice or co-conspirator to 'Agricultural Operation Interference.'" (Compl. ¶ 24 (Doc 2).)

8.     Plaintiff JAMES MCWILLIAMS is a professor in the Department of History at Texas State University at San Marcos.  McWilliams alleges that H.B. 187 inhibits his "access to reliable, accurate, first-hand source materials" which he alleges is important to his research. (Compl. ¶ 25 (Doc 2).)

9.     Plaintiff JESSE FRUHWIRTH is an activist and freelance journalist in Salt Lake City who covers environmental and animal rights topics on a variety of social media outlets. Fruhwirth alleges that he cannot report the investigations at animal agricultural operations in Utah because of H.B. 187.  (Compl. ¶ 26 (Doc 2).)

10.     Plaintiffs assert that various legislators made derogatory comments about Plaintiff PETA specifically, and other organizations and individuals generally during the debate and passage of H.B. 187.  *See* (Compl., ¶¶ 42, 43, 44, 45, 46, 47, 48, 50, 51, and 52 (Doc 2).)

## LEGAL STANDARD

Defendants move to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  In reviewing a 12(b)(6) motion to dismiss, the court assumes the truth of well-pleaded facts and draws reasonable inference in a light most favorable to the plaintiff.  *E.g.*, *Leverington v. City of Colo. Springs*, 643 F.3d 719, 723 (10th Cir. 2011).  But a claim survives

only if "there is plausibility in the Complaint." *Hall v. Witteman*, 584 F.3d 859, 863 (10th Cir. 2009) (citations and quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S.678, 129 S. Ct. 1937, 1949 (2009)). Threadbare recitals of elements, facts "merely consistent" with liability, "labels and conclusions," or "unadorned, the-defendant-unlawfully-harmed me accusation[s]" are insufficient. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949; *Leverington*, 643 F.3d at 723 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *Gee v. Pacheco*, 627 F.3d 1178, 1184–85 (10th Cir. 2010) (citations and quotations omitted); *Hall*, 584 F.3d at 863 (citations and quotations omitted). The U.S. Supreme Court and Tenth Circuit suggest a two-step approach— identifying the conclusory allegations in the Complaint and then considering the factual allegations in the Complaint to determine if they plausibly suggest entitlement to relief. *Hall*, 584 F.3d at 863 (quoting *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1951).

## ARGUMENT

Because Plaintiffs lack standing to challenge the statute, the Court should dismiss Plaintiff's Complaint in its entirety. Alternatively, Defendants move to dismiss Plaintiffs' fourth cause of action – that the statute violates their right to equal protection – because Plaintiffs cannot show that the law lacks a rational relationship to a legitimate legislative purpose. Defendants also move to dismiss Plaintiffs' third cause of action – that the statute is preempted by the False Claims Act – because Plaintiffs cannot show that Congress intended to assert complete control over this aspect of agricultural operations.

I.       **THE PLAINTIFFS LACK STANDING TO CHALLENGE THE STATUTE**.

"A plaintiff challenging the validity of a criminal statute under which he has not been prosecuted … must show a real and immediate threat of his future prosecution under that statute to satisfy the injury in fact requirement." *Bronson v. Swenson*, 500 F.3d 1099, 1107 (10th Cir. 2007). This requirement is characterized as the "credible threat" test. *Id.* A credible threat arises from an objectively justified fear of real consequences. *D.L.S. v. Utah*, 347 F.3d 971, 975 (10th Cir. 2004). Thus, a plaintiff does not obtain standing based merely on a subjective fear of future prosecution. *Bronson*, 500 F.3d at 1107. To the extent "clarity prevails only at the poles," threats deemed credible are pre-enforcement claims brought after the entity responsible for enforcing the challenged statute actually threatens a particular plaintiff with arrest or even prosecution. *Id.* at 1108. At the other pole, there is no credible threat where there are affirmative assurances of non-prosecution from a governmental actor responsible for enforcing the challenged statute, such assurance prevents a "threat" of prosecution from maturing into a credible one. *Id.*

Not all cases will fit squarely in the poles—some cases fall in a "hazy area" without a particularly well-defined test or analysis. *Brown v. Herbert*, 850 F.Supp.2d 1240, 1247 (D. Utah 2012). In such a case, the appropriate focus is whether a reasonable person would view the threat of prosecution sufficiently likely that he or she would be deterred from engaging in the prohibited conduct. *Id.* at 1247-48. However, whether the plaintiff was charged, prosecuted or

directly threatened under the Statute are still relevant factors in determining whether there is a credible threat of prosecution. *See D.L.S.*, 374 F.3d at 974; *Bronson*, 500 F.3d at 1109.

A.  There is no credible threat that any of the Plaintiffs will be prosecuted under the statute.

Broadly, Plaintiffs have failed to allege facts sufficient to take their claim from the "speculative" to the concrete.  The statute only criminalizes four types of conduct: a) placing a recording device on the property of an agricultural operation; b) obtaining access to an agricultural operation under false pretenses; c) applying for employment under false pretenses and then conducting a surreptitious recording; and d) recording while committing a criminal trespass.

The academics and reporters (Counterpunch, Potter, McWilliams and Fruhwirth) have not alleged any action which could possibly violate the statute.  The academics want nothing more than information, and the reporters want only to report on information gathered by others. The statute does not criminalize the distribution of information acquired at such operations, even if that information is gathered in violation of the statute.  Therefore, neither is at risk of running afoul of the statute and each is too far removed from the actual information gathering to have standing.

Of the remaining Plaintiffs, none has alleged any intent to violate sections (a) or (d) of the statute, and none has alleged any specific plans to violate sections (b) or (c), only that they may intend to in the future.  The statute only criminalizes behavior that takes place on the property of an agricultural operation.  Plaintiffs can take an investigation all the way through the

planning stage and even somewhat into the implementation stage, by identifying the specific operation they intend to investigate, the person they plan to use as an undercover operative, and go as far as the property line of the operation they have targeted before violating the law. No Plaintiff has alleged that level of specificity with their plan and thus they fail to take their claims beyond the speculative. Accordingly, no Plaintiff can show an immediate threat of prosecution and they each lack standing. *See Bronson,* 500 F.3d at 1109.

    B.  <u>The Plaintiffs have not demonstrated that the statute has a chilling effect on their speech.</u>

To have standing to challenge a statute based on a "chilling effect," plaintiffs must support that theory with (1) evidence that in the past they have engaged in the type of speech affected by the challenged government action, (2) affidavits or testimony stating a present desire, though no specific plans, to engage in such speech; and (3) a plausible claim that they presently have no intention to do so because of a credible threat that the statute will be enforced. *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1089 (10th Cir.2006).[3]

To state a claim that their speech is chilled, the Plaintiffs must allege facts sufficient to show evidence that in the past they have engaged in the type of speech affected by the challenged government action. *Id*. No Plaintiff states that they have in the past or at any time prior to the enactment of this statute, had any intent to engage in the behavior proscribed by the statute and thus they fail to meet the first prong of the chilling effect test.

---

[3] While Defendants address Plaintiffs' standing to challenge the statute under First Amendment grounds in this motion, Defendants do not concede that the statute presents a First Amendment issue.

The only plaintiff to actually face a prosecution ostensibly under the statue was Ms. Meyer. However, shortly after she was charged, the charges were dropped because she had not actually engaged in any behavior which violated the statute. Ms. Meyer states that she has no intention of violating the statute in the future, and thus does not satisfy the second prong of the chilling test.

Additionally, unlike other statutes passed around the country, Utah's statute does not criminalize the mere possession or distribution of materials which may have been obtained in violation of the statute. The statute only applies to the person who actually engages in the recording or trespassing activity, not third parties who may come to possess such materials. The Plaintiffs who merely rely on this information cannot show either a chilling effect or a credible threat of prosecution under the statute and thus lack standing.

C. **The Plaintiffs each lack standing to challenge the statute.**

The relative merits of each Plaintiff's standing are discussed more fully below.

1. Animal Legal Defense Fund

ALDF asserts that it has in the past "conducted undercover investigations at animal facilities around the country" and that it "has concrete plans to conduct an investigation at an animal agricultural operation in Utah". Compl. ¶ 19 (Doc 2). Specifically, "ALDF has identified potential investigation sites, contracted with a private investigation firm…obtained employment applications from agricultural operations, and engaged an expert consultant – Plaintiff Daniel Hauff – to advise it on an undercover, employment-based investigation at a factory farm."

Despite these allegations, ALDF has not paid any money to Mr. Hauff <u>Compl. ¶ 24 (Doc 2).</u> or identified exactly where or how they plan to conduct the investigation.  In the Complaint, Mr. Hauff identifies several steps to such an investigation which could not be reasonably seen as a violation of the law, such as, "identifying and scouting locations, hiring investigators, advising investigators in-field on everything from the effective use of surveillance equipment to emergency decision-making" *Id.*  While they allege that their members have in the past conducted undercover investigations, they do not allege that their members will conduct the investigation they are thinking about conducting in Utah, only that they will have some involvement.  Because they cannot show that their members will conduct the investigation, and because they have not actually taken any legal steps toward conducting such an investigation, they cannot show a credible threat of prosecution, only a speculative threat at some indeterminate point in the future.  It is difficult to identify the contours of ALDF's claim without this information, and accordingly, their claim is premature.

2.   People for the Ethical Treatment of Animals

Unlike ALDF, PETA has not taken any steps, legal or otherwise, toward engaging in conduct which may violate the statute.  PETA states that it, "is interested and willing to conduct an investigation in Utah but for the threat of criminal prosecution…"  <u>Compl.  ¶ 20 (Doc 2).</u> PETA alleges that it has engaged in this type of behavior in the past, never in Utah.  Without alleging more concrete plans, PETA's claim is merely speculative and is insufficient to show an immediate threat of prosecution.

3.   Counterpunch

Counterpunch does not allege that it will engage in any behavior which might be reasonably considered to violate the statute.  Plaintiff CounterPunch must objectively show a credible threat of prosecution. *Bronson*, 500 F.3d at 1107.  However, CounterPunch does not allege to have received any direct threat of prosecution from the entity responsible for enforcing the Statute.  Compl.  ¶ 21 (Doc 2). Nor has CounterPunch been charged or prosecuted under the Statute.  Id.  CounterPunch does not allege to actually engage in the prohibited conduct under the Statute.  Thus, prosecution is unlikely because a reasonable person in CounterPunch's position would not view the threat of prosecution as sufficiently likely to deter them from continuing their practice of reporting on politics, news, civil liberties, and culture.  *See Brown*, 850 F.2d at 1247.  CounterPunch's threat is not supported by facts that would lead a reasonable person to believe that prosecution is likely because CounterPunch does not allege to engage in the prohibited conduct. *See id*.

4.   Amy Meyer

Ms. Meyer is an animal rights activist who is the only person to have been actually prosecuted under the statute.  Compl.  ¶ 22 (Doc 2).  She does not allege to have ever in the past engaged in activity prohibited by the statute, nor does she allege that she intends to violate the statute in the future.  While she was charged with violation of the statute, the charges were ultimately dropped because she had not engaged in behavior which actually violated the law.  She nominally alleges chilling of her rightful and lawful exercise of her first amendment rights, but her remedy is not invalidation of the law she did not break.  Rather, it is redress of the harm

she already suffered.  Because she does not allege any specific plans to violate the statute, she cannot show a credible threat of prosecution and thus lacks standing.

    5.  Will Potter

Mr. Potter alleges only that he is a journalist and advocate who relies on information gathered through undercover investigations.  He does not allege any specific plans to violate the statute, and because he only relies on the recordings created, he cannot establish that his speech is chilled by the law.  Therefore, he lacks standing.

    6.  Daniel Hauff

Mr. Hauff is a consultant who has allegedly overseen undercover investigations in the past.  ALDF alleges that they have engaged him, but Mr. Hauff alleges that he has not received any compensation nor has he entered into any formal arrangement with ALDF.  Mr. Hauff further alleges that he does not conduct the investigations himself, but is concerned about liability as an accessory or accomplice.  Compl. ¶ 24 (Doc 2). Like ALDF and PETA, Mr. Hauff cannot show an immediate, credible threat of prosecution and therefore lacks standing.

    7.  James McWilliams

Mr. McWilliams states that he is a "scholar and historian" and that he relies on the materials produced by undercover operations.  Compl. ¶ 25 (Doc 2). Because he cannot show that he will engage in activity which violates the statute, he lacks standing.  Furthermore, because possession and distribution of these materials is not prohibited under Utah's law, he cannot show a chilling effect on his own speech and thus lacks standing.

8.  Jesse Fruhwirth

Mr. Fruhwirth is a blogger and an activist, but does not himself engage in any behavior which is proscribed by the statute.  Compl.  ¶ 26 (Doc 2).  Like Counterpunch and Mr. McWilliams, he cannot demonstrate a reasonable threat of prosecution or a chilling effect on his speech and thus lacks standing.

Because none of the Plaintiffs can show either a reasonable and immediate threat of prosecution, and because they cannot show that they have engaged in the type of proscribed speech in the past, they lack standing and their claims should be dismissed.

**II.  PLAINTIFFS FAIL TO STATE A CLAIM THAT THE STATUTE IS MOTIVATED BY ANIMUS IN VIOLATION OF THEIR EQUAL PROTECTION RIGHTS.**

In their fourth cause of action, Plaintiffs seek a declaration that the statute is unconstitutional because it violates their right to equal protection under the Fourteenth Amendment.  The Fourth Cause of Action fails to state a claim.

A.  Where animus is alleged, the statute is still subject to rational basis review.

Plaintiffs do not assert that they are a suspect or a quasi-suspect class, but rather, that the law is invalid because it was "enacted based on improper motives, including animus toward a particular group of people...." (Compl.  ¶ 149 (Doc 2).).  Plaintiffs correctly cite to one of the controlling cases on animus, *U.S. Dep't of Agric. v. Moreno*.  413 U.S. 528 (1973)  In *Moreno*, the United States Supreme Court considered a challenge to a law that denied food stamp coverage to unrelated individuals living in the same household.  *Id.* at 529.  The legislative history of the challenged law was replete with hostility toward hippies and it was clearly

Congress' intent to punish that group.  The plaintiffs who challenged the law were not themselves hippies, but had nevertheless been disqualified because of the overly broad classification.

The Court analyzed the law using equal protection analysis and held that because the plaintiffs were neither a suspect class nor did the law implicate a fundamental right, that the law was subject to rational basis review.  The Court outlined the standard two-part test: first, whether the law served a legitimate state interest; and second, whether the classification was rationally related to that interest.  *Id.* at 534-35.

In analyzing the first prong of rational basis review, the Court stated, "[I]f the constitutional conception of 'equal protection of the laws' means anything, it must at the very least mean that a bare congressional desire to harm a politically unpopular group cannot constitute a legitimate government interest."  *Id.* at 534 (emphasis omitted).  The Court analyzed the government interest using rational basis review.  The Court considered the government's argument that the law was designed to prevent benefit fraud, but ultimately rejected it, finding that the law did not further the goal of fraud prevention because the benefits laws at issue already had fraud prevention and punishment schemes.  *Id.* at 536.

In addition to finding that the government interest was illegitimate, the Court also held that the law failed the second prong of rational basis review, whether the classification was rationally related to the government's interest.  The Court found that relatedness was an overbroad classification when considering food stamp fraud, outlining different ways in which otherwise qualified individuals who have no fraudulent intention might find themselves at odds

10

with the new proscription.  Thus, the Court found the law to have failed both prongs of rational basis review and held that the law violated the equal protection clause.  *Id.* at 536-37.

More recently, the Court relied on the animus doctrine in striking down the Defense of Marriage Act ("DOMA") in *United States v. Windsor,* 133 S. Ct. 2675, 2714 (2013) .  In considering the equal protection argument raised in Windsor, the Court again relied on the "politically unpopular group" language from *Moreno*.  *Id.* at 20.  The Court analyzed the legislative history of DOMA and found that its motivation was clear animus toward same-sex couples.  However, in analyzing the government interest at issue, the bulk of the Court's analysis focused on the federalism question at issue in that case, finding that Congress' departure from the long-established principle that marriage was a state issue did not serve as a rational basis for passing the law.  The Court stated, "DOMA's unusual deviation from the usual tradition of recognizing and accepting state definitions of marriage here operates to deprive same-sex couples of the benefits and responsibilities that come with federal recognition of their marriages."  *Id.*   This focus on the federal-state dynamic serves to distinguish *Windsor* from both *Moreno* and the case at hand where there is no clear federal-state antagonism on this issue.[4]

---

[4] Unlike the marriage law at issue in *Windsor*, the False Claims Act does not rely on an area of law that has traditionally always been a state issue, but rather, clearly defines how a Federal whistleblower claim will be handled.

Here, Plaintiffs have identified a number of statements which they allege demonstrate animus toward them and their viewpoint. *See* Compl., ¶¶ 42-52.[5] Despite those allegations, the focus is only on whether the law serves a legitimate government interest and whether the law is rationally related to that interest.

B.  The law serves a legitimate government interest by protecting private property rights.

In analyzing the government interest furthered by the statute, the Court must look to the text of the law and the specific conduct prohibited by the statute.  Unlike other state's laws, Utah's does not criminalize the possession or distribution of recordings made in violation of the law.  Rather, it focuses on the unlawful entry and subsequent recording while on the property.  In essence, the law punishes trespass and fraud and protects the right of private property owners to control who has access to their property and what they do while on that property.  The right to control who enters your property and what they do while on that property has been recognized and protected by government and the courts.  *See e.g.* Utah Code Ann. § 76-6-206 (2013) "Criminal Trespass"; Utah Code Ann. § 76-6-206.3 (2009) "Criminal trespass on agricultural or range land".

The challenged statute does little more than provide protection to an industry and a small group of people who have been specifically targeted for surreptitious access and non-permitted recording.  The Plaintiffs themselves outline their own long history attempting to disrupt this industry.  *See e.g.* Compl., ¶ 20 ("A central tenet of PETA's mission is to expose cruelty to

---

[5] Plaintiffs allege a number of other connections between national pro-agriculture groups and specific legislators upon information and belief, but these mere connections do not themselves demonstrate animus.  Compl., ¶¶ 53-59.  At best, they may show collusion.

farmed animals, educate the public about such cruelty, and encourage people to choose a lifestyle that does not involve or support abuse, neglect, or exploitation of animals.")  The threat to this industry is clearly established by the allegations of Plaintiffs' Complaint and the government has acted to counter that threat in a very reserved and cautious way.

The government certainly has an interest in protecting property owners and the fact that it has only acted to protect this type of property owner is of no moment here.  The government can act to protect a group so long as it does not grant a right to one group while simultaneously denying that right to another.  *See McCullen v. Coakley*, 571 F.3d 167 (2009), *cert. granted* U.S.L.W. 12-1168 (holding that laws specifically protecting the zone around abortion clinics is constitutional)*; see also Diaz v. Brewer*, 676 F.3d 823, 824 (9th Cir. 2012) (dissent).

The law also provides agricultural operators with an added assurance that their employees are loyal.  By criminalizing the act of fraudulently applying for employment with the intent of causing harm to the employer, the legislature has given these property owners an added protection against people they would not otherwise allow on their property.

Despite the Plaintiffs' characterization, the law does not criminalize whistleblowing. The law does not criminalize recording by a legitimate employee who maintains physical control of the recording device (i.e. whistleblowing), rather, it applies only to recording by leaving the device on the property, gaining access through fraud, or trespassing.  Furthermore, the law does not interfere with lawful inspections by government officials as they do not commit a trespass when entering into and recording on this type of private property.

13

Another important limit on the scope of Utah's law is that it does not criminalize other types of investigation.  For example, interested groups could conduct interviews with existing employees, seek public access to inspection reports, research publicly available materials, etc.  Nor does the law prevent property owners from granting access to these groups to conduct recordings, should they so choose.

The law also does not silence the viewpoint presented by Plaintiffs.  By permitting the possession and distribution of recordings made at animal agricultural operations, the law still protections Plaintiffs' right to express their viewpoint without restriction.  The law also has no effect on a wide range of other types of speech which the Plaintiffs allege to engage in, such as protests, awareness campaigns, lobbying, celebrity endorsement, etc.

C.   Animus alone does not act to invalidate the law.

The Supreme Court has stressed that evidence of animus alone does not invalidate a law.  *See  Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367 (2001) ("[B]iases may often accompany irrational (and therefore unconstitutional) discrimination, [but] their presence alone does not a constitutional violation make.").  The limited relevance of animus follows from the "familiar principle of constitutional law that [the Supreme] Court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive."  *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 48 (1986); *accord City of Mobile v. Bolden*, 446 U.S. 55, 92 (1980) (Stevens, J., concurring in the judgment) ("[A] political decision that is supported by valid and articulable justifications cannot be invalid simply because some participants in the decision making process were motivated by a purpose to disadvantage a

14

minority group.").  Animus was relevant in *Windsor* simply because there was no other way to explain the sharp departure of the laws in those cases from long-established legal precedent. Nothing remotely analogous is at issue in this case, where the legislature acted only to protect the long-established right of property owners to control who enters their property.

In short, the government interests here are legitimate and at least rationally related to the proscribed conduct.  Regardless of any animus the Plaintiffs might allege, the law nevertheless remains within the bounds of equal protection.

### III.     PLAINTIFFS HAVE FAILED TO STATE A CLAIM THAT H.B. 187 IS PREEMPTED BY FEDERAL LAW.

Plaintiffs have asserted that H.B. 187 is preempted by Federal False Claims Act.  (31 U.S.C. §§ 3729, 3730 (2006)).  In *City of Stilwell, Okl. v. Ozarks Rural Elec. Co-op. Corp.*, the Tenth Circuit has outlined the various ways in which Federal law may preempt state law:

> Federal preemption of state law can occur in various ways. First, Congress may preempt state law by the explicit language of a federal statute. Second, Congress may "occupy a field" by enacting legislation so comprehensive that the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject. Finally, even where Congress has not entirely displaced state regulation in a specific area, state law is preempted to the extent that it actually conflicts with federal law. "Conflict" preemption can occur where compliance with both federal and state law is impossible, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

79 F.3d 1038, 1043-44 (10th Cir. 1996) (internal citations and quotations omitted).

The type of preemption which may be implicated by H.B. 187 depends on the scope of the False Claims Act.  The False Claims Act creates a statutory scheme whereby the government through its own or other private action can recover money fraudulently paid out under Federal

15

contracts.  Plaintiffs argue that the False Claims Act, which protects certain whistleblowers, preempts H.B. 187.

Section 3729 outlines how liability is established and how damages are calculated for violations of the Act.  Section 3730 outlines how actions are brought, either by the United States Attorney General, or by private citizens through what is known as a "qui tam" action. Whistleblower protection is outlined in § 3730(h)(1), which states:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

The False Claims Act therefore protects "any employee" who suffers an adverse employment action as a result of making a report under the False Claims Act.  Even a cursory examination of H.B. 187 shows that there is no conflict between it and the False Claims Act.

A.  The False Claims Act does not expressly preempt H.B. 187.

The first type of preemption occurs when Congress has preempted a state law by express statutory language.  *See e.g. Nat'l Meat Ass'n v. Harris*, 132 S. Ct. 965; 565 U.S. ____ (2012). There is no language in the False Claims Act which expressly states that all state whistleblowing laws are preempted by Federal regulation.  Therefore, there is no express preemption.

B.  Federal law is not so predominant that it precludes state protection of agricultural operations in this manner.

The second type of preemption occurs where the Federal regulatory scheme is so pervasive that it precludes enforcement of state laws on that subject.  The False Claims Act clearly provides whistleblowers with protection from adverse employment action when they make a report or claim under the act, but H.B. 187 makes no mention of whistleblowers or an employer's relation to them.  It criminalizes fraud and trespass, neither of which can be implicated by the False Claims Act.

C.  There is no actual conflict between the False Claims Act and H.B. 187.

Plaintiffs assert that, "Because one of the core purposes of the False Claims Act…is to provide incentives and protections for private persons to surreptitiously uncover fraud against the federal government, [H.B. 187] is preempted."  Compl., ¶ 141. Plaintiffs' argument rests on a misreading of both H.B. 187 and the False Claims Act.

H.B. 187 does not proscribe all recording, only that recording which is obtained "by leaving a recording device on the agricultural operation", by someone who accepts employment under false pretenses, or "while committing criminal trespass."  Nothing prevents a legitimate employee from conducting a recording or otherwise documenting and reporting violations of Federal law.  Therefore, whistleblower protection is still in place and the law does not interfere with potential claims under the False Claims Act.[2]

---

[2]A number of articles outline the tension between laws like H.B. 187 and Federal meat processing laws (not the False Claims Act).  However, none clearly identifies a tension between

## CONCLUSION

Because the Plaintiffs have failed to establish that they face an immediate threat of criminal prosecution, they lack standing.  Furthermore, their equal protection claims lack merit because even if Plaintiffs are able to establish that the law was fueled by animus, there exist a number of rational bases for its enactment and their claim fails.  Finally, Plaintiffs cannot show that the False Claims Act preempts H.B. 187 and their preemption claim fails.  For these reasons, Defendants respectfully request that the Complaint be dismissed, in its entirety, or in the alternative, that the Court dismiss those Plaintiffs that lack standing, as well as Plaintiff's Third and Fourth causes of action.

DATED:  October 11, 2013

OFFICE OF THE UTAH ATTORNEY GENERAL

/s/ Daniel R. Widdison
KYLE J. KAISER
DANIEL R. WIDDISON
Assistant Utah Attorneys General
Attorneys for Gary R. Herbert and John Swallow

---

the narrow scope of Utah's law and the operation of the facilities or the inspections thereof.  *See e.g.* Lacey, Sara, *Hard To Watch: How Ag-Gag Laws Demonstrate The Need For Federal Meat And Poultry Industry Whistleblower Protections*, 65 ADMIN. L. REV. 127, 149 (2013) ("[These] laws vary a great deal, and those that are tailored specifically to antifraud and employment prerequisites may have a stronger case to avoid federal preemption because the [Federal Meat Inspection Act] and [Poultry Products Inspection Acts] are more closely aligned with slaughter practices than personnel concerns").

## APPENDIX A

**76-6-112.   Agricultural operation interference -- Penalties.**

(1) As used in this section, "agricultural operation" means private property used for the production of livestock, poultry, livestock products, or poultry products.

(2) A person is guilty of agricultural operation interference if the person:

(a) without consent from the owner of the agricultural operation, or the owner's agent, knowingly or intentionally records an image of, or sound from, the agricultural operation by leaving a recording device on the agricultural operation;

(b) obtains access to an agricultural operation under false pretenses;

(c) (i) applies for employment at an agricultural operation with the intent to record an image of, or sound from, the agricultural operation;

(ii) knows, at the time that the person accepts employment at the agricultural operation, that the owner of the agricultural operation prohibits the employee from recording an image of, or sound from, the agricultural operation; and

(iii) while employed at, and while present on, the agricultural operation, records an image of, or sound from, the agricultural operation; or

(d) without consent from the owner of the operation or the owner's agent, knowingly or intentionally records an image of, or sound from, an agricultural operation while the person is committing criminal trespass, as described in Section **76-6-206**, on the agricultural operation.

(3) A person who commits agricultural operation interference described in Subsection (2)(a) is guilty of a class A misdemeanor.

(4) A person who commits agricultural operation interference described in Subsection (2)(b), (c), or (d) is guilty of a class B misdemeanor.

19