# EXHIBIT "A"

# Counter Expert Report of Dr. Amy Kristin Sanders

Expert's Rebuttal Report

for

Animal Legal Defense Fund, et. al.

v.

Herbert

Submitted by Amy Kristin Sanders, J.D./Ph.D.

February 29, 2016

**Introduction**

Dr. Amy Kristin Sanders is an associate professor in residence at Northwestern University's campus in Doha, Qatar, where she teaches courses in media law and ethics as a member of the journalism faculty. A member of the Florida and Missouri Bar Associations, Sanders worked as a copy editor and page-designer for a mid-sized local newspaper in Florida before coming to the academy.

Based on her professional and academic career, Dr. Sanders was asked to provide her expertise regarding journalistic practice and ethics in the United States. In particular, she was asked to provide her expertise as to the role of surreptitious surveillance in the information-gathering process.

After reviewing the report of Will Potter, M.A., who has been disclosed by the Plaintiff as one of its expert witnesses, Dr. Sanders has concluded the following:

i.  Mr. Potter's broad, categorical statements regarding the role of surreptitious surveillance and its importance to reporting information do not represent mainstream practice within the field of journalism.

ii. Mr. Potter's conclusion that the type of surreptitious surveillance prohibited by Utah Code § 76-6-112 represents the sole way to provide the public with important information about agricultural production facilities represents a grossly inaccurate interpretation of both the statute and modern information-gathering practice.

iii. Mr. Potter's views represent those of an activist – engaged in what well-known journalism practitioners Bill Kovach and Tom Rosenstiel have dubbed "interest-group journalism"[1] – rather than those of a journalist seeking truthful information to report objectively to the public, which colors

---

[1] BILL KOVACH & TOM ROSENSTIEL, BLUR: HOW TO KNOW WHAT'S TRUE IN THE AGE OF INFORMATION OVERLOAD 34, 50 (2011).

1

his perspective on the feasibility of traditional information-gathering techniques and predisposes him to favoring a method that will result – occasionally – in shocking video clips or alarming photos that can be used to encourage others to take up his cause.

## Expert Analysis

In his report, Mr. Potter brashly concludes that, in his opinion, "there is no other research method … roughly comparable to undercover investigations."[2] In attempting to support his claim, Mr. Potter quickly dismisses traditional methods of investigation – including using state and federal freedom of information laws – because they "reveal minor details" that "lack context" and "are limited and significantly delayed."[3] Yet, Mr. Potter provides no evidence to support his overbroad conclusions. Instead, he cites to a press release[4] prepared by the plaintiff to this litigation that discusses one specific request for information under the federal Freedom of Information Act.[5] A February 26, 2016, *Washington Post* article detailed how one of the plaintiffs in this lawsuit, People for the Ethical Treatment of Animals, successfully used FOIA to determine that the National Institute of Health had not followed through on promises to relocate research chimpanzees from their laboratories to animal sanctuaries.[6]

Although Mr. Potter's report states, "Without [surreptitious surveillance] an industry inextricably connected to issues of animal welfare, public health, and

---

[2] Expert Report of Will Potter, M.A., at 7.
[3] *Id.*
[4] Animal Legal Defense Fund, *ALDF Calls For Full Disclosure of Factory Egg Farm Conditions By FDA,* http://aldf.org/press-room/press-releases/aldf-calls-for-full-disclosure-of-factory-egg-farm-conditions-by-fda/
[5] Expert Report of Will Potter, M.A., at 7.
[6] Darryl Fears, *NIH Vowed to Move It Research Chimps from Labs, But Only 7 got Safe Haven in 2015,* WASHINGTONPOST.COM, https://www.washingtonpost.com/news/animalia/wp/2016/02/26/despite-nihs-promise-only-7-research-chimps-got-safe-haven-in-2015/

consumer safety would operate with virtually no checks and balances on its operation," this simply isn't true. A commentary piece written by Farm Sanctuary Policy Director Bruce Friedrich – and akin to many of the pieces Mr. Potter has published – that appeared in the *Minneapolis Star Tribune* in April 2014 provided compelling information about the USDA's lack of oversight related to the Humane Slaughter Act: "Records just obtained through a Freedom of Information Act (FOIA) request that was filed by the Animal Welfare Institute, the Lewis & Clark Animal Legal Clinic, and my organization indicate that nothing has been done over the past year to improve the situation. … As just one example from our FOIA response, a USDA report documents a terrified cow who was shot through the head and remained completely conscious, bellowing and foaming at the mouth."[7] Potter quotes American novelist Jonathan Safran Foer, who teaches creative writing, as saying in his book, "[u]ndercover investigations by dedicated nonprofit organizations are one of the only meaningful windows the public has into the imperfect day-to-day running of factory farms and industrial slaughterhouses."[8] However, the aforementioned examples, as well as the fact that Mr. Foer suggest that the public can be informed about animal agriculture without reliance on employment-based surreptitious surveillance.

Further, Mr. Potter quickly dismisses the use of whistleblowers as informants – which is fully permissible under Utah Code § 76-6-112 – because he asserts that coming forward places them at "significant risk."[9] It is commendable that Mr. Potter is concerned about the well-being of agricultural workers who share information, but he ignores the basic fact that nearly any whistleblower – in any industry – may face potential reprisal for his or her actions – and that the law is often designed to protect

---

[7] Bruce Friedrich, *USDA Needs to Take Steps to Stop Abuse of Animals,* STARTRIBUNE.COM, http://www.startribune.com/usda-needs-to-take-steps-to-stop-abuse-of-animals/256767211/
[8] JONATHAN SAFRAN FOER, EATING ANIMALS 181 (2009).
[9] Expert Report of Will Potter, M.A., at 8.

3

them from such retribution. Mr. Potter notes that agricultural employees "do not have the same access to legal representation as other communities."[10] However, it seems organizations like ALDF and others who want to work with these whistleblowers could willingly provide such representation in exchange for such "vitally important"[11] information that agricultural employees can lawfully provide under Utah Code § 76-6-112. In the very example provided by Mr. Potter, the activist group Food Integrity Campaign provided legal representation to the chicken farmer Craig Watts – who doesn't appear to be an immigrant or nonnative English speaker – in his whistleblower action.[12]

The approach described by Mr. Potter – who refers to himself in his report to this court as "an investigative journalist" – does not represent mainstream journalistic practice and ethical values. His report provides only vague descriptions of singular cases in which traditional techniques have not successfully revealed the information sought by activist organizations. In essence, Mr. Potter's report argues that these groups should be allowed to rely on surreptitious surveillance first and foremost, without even attempting other methods of information-gathering. It fails to outline even a single case by the ALDF – or similar organizations – in which all the available alternative methods of information-gathering were exhausted before the groups attempted to rely on surreptitious surveillance based on false pretenses.

As I outlined in my previous report, most major professional journalism groups eschew such tactics unless and until all other alternative have been fully exhausted. Even then, the organizations undertake a determination of whether the use of hidden

---

[10] Expert report @ 8.
[11] Expert report @ 5.
[12] Lindsay Abrams, *Chicken Farmer Who Spoke Out Against Factory Farm Abuses Filed for Federal Whistleblower Protection,* SALON.COM ¶2, http://www.salon.com/2015/02/19/chicken_farmer_who_spoke_out_against_factory_farm_abuses_files_for_federal_whistleblower_protection/.

4

cameras is justified by evaluating the importance of the information versus its ability to be procured in other ways. Essentially, Mr. Potter's report suggests that groups such as ALDF should be allowed to use false pretenses to enter agricultural production facilities to surreptitiously surveil these operations simply because this approach represents the path of least resistance.

Mr. Potter's report – though dotted with references to journalism and the idea of sharing information to the public – bears the hallmarks of an activist more than a professional journalist. Much of the work Mr. Potter refers to as journalism takes an advocacy position – interest-group journalism as referred to by Bill Kovach, former Washington Bureau Chief for the New York Times, and Tom Rosenstiel, executive director of the American Press Institute and former director of Pew's Project for Excellence in Journalism.[13] It uses convenient facts in a persuasive manner to advocate a position that advances the agenda of interest groups. Indeed, in a recent interview Mr. Potter said, "As time went by, I became more immersed and it [eco-terrorism and topics related to the agriculture industry] became a personal issue as well."[14] In many ways, Mr. Potter has become the story – being interviewed and providing commentary in more than 300 media outlets internationally as he notes in his CV.[15] His personal website includes a "Press" page inviting reporters on deadline to contact him.[16] In addition, the "Speaking" page provides instructions on how to book Mr. Potter as a speaker.[17] In short, Mr. Potter himself has become the story – in contradiction to the principles of major journalism organizations, including the very Society of Professional Journalists who awarded him a Mark of Excellence award for

---

[13] Kovach & Rosenstiel, *supra* note 1.
[14] Lauren Sarner, *The FBI Only Has Itself to Blame for Creating a Will Potter,* INVERSE.COM, https://www.inverse.com/article/11968-the-fbi-has-only-itself-to-blame-for-creating-a-will-potter-job-hacks
[15] Expert Report of Will Potter, M.A. at 7.
[16] http://willpotter.com/press/
[17] http://willpotter.com/speaking/

outstanding student journalism back in 1999 while he was an undergraduate at the University of Texas. As SPJ President Kevin Smith said in 2010, "Advocacy, self promotion, offering favors for news and interviews, injecting oneself into the story or creating news events for coverage is not objective reporting, and it ultimately calls into question the ability of a journalist to be independent, which can damage credibility."[18] Not surprisingly, it seems clear that Mr. Potter's own personal interest in issues related to animal agriculture have hampered his ability to independently and objectively evaluate the availability and adequacy of alternative methods of information-gathering.

Further, Mr. Potter's report does not even begin to address the privacy implications of allowing a person to fraudulently gain access to a private business and engage in surreptitious surveillance. It is hard to square his acceptance of this behavior with his outspoken opposition to "the FBI's use of surveillance, infiltration and informants within social movements."[19] Mr. Potter's argues that "these investigations are vitally important to public understanding," taking an "ends justify the means" approach to ethics that is unlikely to be categorically supported by most major news organizations, particularly when alternatives methods of information-gathering exist.

### Conclusion

Throughout his report, Mr. Potter discusses the importance of undercover investigation – mischaracterizing the statute as prohibiting such activity. It does not. Instead, it limits one component of undercover investigation – surreptitious

---

[18] *SPJ Cautions Journalists: Report the Story, Don't Become Part of It,* SPJ.COM, http://www.spj.org/news.asp?REF=948

[19] Will Potter, Discussion of Government Surveillance of Activists with Will Potter, Former FBI Agent, ACLU and More, GREENISTHENEWRED.COM, http://www.greenisthenewred.com/blog/fbi-surveillance-informants-radio/4754/

surveillance based on false pretenses. Utah Code § 76-6-112 permits a wide array of information-gathering practices. It is up to journalists – and activists like Mr. Potter – to make use of every tool permitted by the law to tell their story – whether they desire to pursue it objectively as professional journalists or from the position of activism from which Mr. Potter approaches the issues.